UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMERCE WEST INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  v.<br><br>ROBERT and ELAINE LUCKE,<br><br>      Defendants. | CASE NO. C18-625-MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;<br><br>DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

  THIS MATTER comes before the Court on the parties' Cross-Motions for Summary Judgment (Dkt. Nos. 12, 23) and Plaintiff's Motion to Strike (Dkt. No. 17.)  Having reviewed the Motions, the Responses (Dkt. Nos. 17, 25), the Replies (Dkt. Nos. 16, 26), and the related record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment; GRANTS Plaintiff's Motion to Strike; and DENIES Defendants' Motion for Summary Judgment.

## Background

Plaintiff Commerce West Insurance Company ("Commerce West") filed this suit against Defendants Robert and Elaine Lucke (the "Luckes") seeking declaratory judgment with respect to whether coverage is owed, pursuant to 28 U.S.C. § 2201. (Dkt. No. 1.)

The Luckes are the holders of an insurance policy with Commerce West, Policy No. ACPA-001464481 (the "Policy"). (Dkt. No. 13, Ex. C.) The Policy was issued on May 22, 2014, and lists the following vehicles owed by the Luckes: (1) a 2002 Nissan Xterra; (2) a 2004 Toyota 4Runner; (3) a 1990 Ford F350; and (4) a 2016 Lexus IS. (Id. at 1.) The Policy provides limits of $250,000 for Underinsured Motorists ("UIM") coverage and $15,000 for Personal Injury Protection ("PIP") coverage. (Id.) The relevant coverage provisions are as follows:

> **INSURING AGREEMENT—PERSONAL INJURY PROTECTION**
>
> **A.** Subject to the Limits of Liability, if you pay the premium for Personal Injury Protection Coverage, we will pay personal injury protection benefits to or for an "insured" who sustains "bodily injury." The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle" as a "motor vehicle".
>
> . . .
>
> **DEFINITIONS—PERSONAL INJURY PROTECTION**
> The Definitions section of the policy is amended as follows for this coverage:
>
> . . .
>
> **1.** "Motor vehicle" means a self-propelled land motor vehicle designed for carrying ten passengers or less and used for the transportation of persons. However, "motor vehicle" does not include a:
>
> . . .
>
>     **e.** Moped as defined by Revised Code of Washington 46.04.304
>     **f.** Motorcycle
>     **g.** Motor-driven cycle.

(Id. at 12-13.)

**UNDERINSURED MOTORIST COVERAGE**

**EXCLUSIONS**

**A.** We do not provide Underinsured Motorists Coverage for "property damage" or "bodily injury" sustained:

  **1.** By an "insured" while operating, or "occupying", any motor vehicle owned by that "insured" which is not insured for Liability Coverage under this policy. . . .

**B.** We do not provide Underinsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured":

  . . .

  **3.** While operating, or "occupying", a motorcycle or motor-driven cycle which is not insured for Liability Coverage under this policy.

(Id. at 15-16.)

On September 14, 2017, Mr. Lucke was operating a motorcycle when he was injured in an accident with another vehicle (the "accident"). (Dkt. No. 13, Ex. A.) The Luckes do not dispute that the motorcycle was owned by them, was never listed under the Policy, and that they never paid premiums for motorcycle coverage under the Policy. (Dkt. No. 16 at 2-3; Dkt. No. 13, Ex. B; see also Ex. C at 1.) Nevertheless, the Luckes submitted a claim for PIP and UIM benefits under the Policy. (See Dkt. No. 13, Ex. D.) While the claim was pending, counsel for the Luckes contacted Commerce West and explained that "the Luckes had significant coverage with [Commerce West] at the time of the subject collision, and "[h]ad they been aware [Commerce West] offered motorcycle coverage, they would have elected to insure themselves under this coverage as well." (Id. at 8-11.) Counsel claimed that, because "[Commerce West] failed to notify the Lucke's that motorcycle coverage was available, in violation of RCW 48.22.030(9)," they were entitled to coverage by operation of statute. (Id.)

1       After determining that the motorcycle was not a covered vehicle, Commerce West denied the claim on March 19, 2018. (Dkt. No. 13, Ex. D at 13-17.) On April 16, 2018, the Luckes submitted a notice of claim under the Washington State Insurance Fair Conduct Act ("IFCA"). (See Dkt. No. 13, Ex. D.) The IFCA notice demands payment of $250,000 in UIM coverage and $15,000 in PIP coverage. (Id.)

      On April 30, 2018, Commerce West filed this action seeking declaratory relief as to coverage for the accident. (Dkt. No. 1.) Commerce West now moves for summary judgment that the Policy does not provide coverage for damages resulting from the accident; that Commerce West complied with the notice requirements Subsection (9); and that violation of Subsection (9) does not create coverage by operation of statute. (Dkt. No. 12.) The Luckes do not dispute that that there is no coverage under the Policy, but move for summary judgment that Commerce West's violation of Subsection (9) gives rise to coverage by operation of statute. (Dkt. No. 16 at 3-4; see also Dkt. No. 13, Ex. D at 8-11.)

**Discussion**

**I. Motion to Strike**

      Commerce West moves to strike portions of the Declaration of Michael E. Mazon ("Mazon Declaration"). (Dkt. No. 16, Ex. 3.) Commerce West contends that the Mazon Declaration contains (1) improper conclusions of law, (2) contentions not based upon personal knowledge, and (3) an improper request for "terms." (Dkt. No. 17 at 9-10.)

      "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The Court finds that the objected-to portions of the Mazon Declaration are inadmissible or otherwise improper. The first paragraph (e.g., Mr. Mazon's statement that "I am confident that the defense has submitted enough evidence for the court to allow it to deny Plaintiffs' motion for summary

judgment. . . ."), contains improper conclusions of law and statutory interpretation, and is not based upon personal knowledge. The request for "terms" is entirely unsupported and is improper. A request for sanctions may not be made in an attorney's declaration, but must be made by separate motion. See Fed. R. Civ. P. 11(c)(2).

The Court therefore GRANTS the Motion to Strike and does not rely upon the stricken statements in its consideration of the Cross-Motions for Summary Judgment.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

### B. RCW 48.22.030(9)

Because there is no dispute that the motorcycle was not covered under the Policy, the sole issues before the Court are (1) whether Commerce West violated RCW 48.22.030(9) and (2) whether a violation gives rise to coverage by operation of statute. The statute provides that "[a]n insurer who elects to write motorcycle or motor-driven cycle insurance in this state must provide

information to prospective insureds about the coverage." RCW 48.22.030(9) (hereinafter, "Subsection (9)").

### 1. Violation of Subsection (9)

The Luckes contend that Commerce West failed to inform them that it provided motorcycle coverage or to provide them with information concerning that coverage when they were "prospective insureds" in May 2014. The Luckes contend that "[h]ad they been aware that [Commerce West] offered motorcycle coverage, they would have elected to insure themselves under this coverage as well." (Dkt. No. 13, Ex. D at 8.) Commerce West responds that it provided this information on its public website, and that in doing so, it satisfied its obligations under Subsection (9). (Dkt. No. 12 at 11-12.) The Luckes claim they never visited the Commerce West website. (Dkt. No. 16 at 4.)

In Washington, an insurer may provide a "notice or document" by electronic means only where a "party has affirmatively consented to that method of delivery and has not withdrawn the consent . . ." RCW 48.185.005(4). "Delivery by electronic means" includes "[p]osting on an electronic network or site accessible via the internet . . ." RCW 48.185.005(1)(a)(i)(B). Contrary to Commerce West's claim that RCW 48.185.005 applies only to "delivery of forms to those who have purchased insurance, not to prospective insureds," the statute defines "party" to mean "any recipient of any notice or document required as part of an insurance transaction, *including but not limited to an applicant, an insured, a policyholder, or an annuity contract holder*," RCW 48.185.005(1)(b), and applies to "any notice to a party or any other document required under applicable law in an insurance transaction." RCW 48.185.005(2). Thus, the statute manifestly applies to prospective insureds like the Luckes, and to information beyond "forms."

It is undisputed that the Luckes never consented to receive notices or documents electronically and that Commerce West did not otherwise advise the Luckes that they provided motorcycle coverage while they were "prospective insureds" or at any other time.[1] (Dkt. No. 16 at 10; Dkt. No. 17 at 2-3.) Whether or not the Luckes informed Commerce West that they owned a motorcycle appears to be irrelevant, as Subsection (9) requires that an insurer "provide information to prospective insureds," not "prospective insureds who own motorcycles."

The Court finds that merely posting information about motorcycle coverage on its website does satisfy the requirements of Subsection (9) where a prospective insured has not also consented to receive notices and documents electronically. Therefore, the Court DENIES Commerce West's Motion for Summary Judgment with respect to this claim.

### 2. Coverage by Operation of Statute

The Luckes claim that Commerce West's violation of Subsection (9) gives rise to uninsured motorist coverage by operation of statute, such that "there was motorcycle coverage in effect in the form of underinsured motorist coverage and personal injury protection at the time of the September 14, 2017 motor vehicle accident." (Dkt. No. 23 at 1.) The Court finds no support for this contention.

First, there is no indication anywhere in RCW 48.22.030 that violation of Subsection (9) gives rise to a private right of action, let alone coverage by operation of statute. The Luckes have cited no cases in support of this claim.

---

[1] The "Washington Personal Auto Application" executed by the Luckes in May 2014 included "a section for selecting different levels of medical payment coverage for Autmobile/Motor home, as well as for Motorcycle medical payment coverage." (Dkt. No. 17 at 2-3; Dkt. No. 18, Ex. G.) This form clearly does not provide "information to prospective insureds about the coverage" in any meaningful way.

Second, while RCW 48.22.030(2) (hereinafter "Subsection (2)") may in certain circumstances give rise to coverage by operation of statute, see Clements v. Travelers Indem. Co., 121 Wn. 2d 243 (1993) (holding that "UIM coverage becomes part of every automobile liability coverage by operation of law *unless* the insured party in writing agrees to a waiver or rejection"), this case clearly arises outside of those circumstances. Subsection (2) provides as follows:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, ***except while operating or occupying a motorcycle or motor-driven cycle***, and ***except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy***. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

RCW 48.22.030 (emphasis added).

Subsection (2) expressly excludes uninsured motorist coverage for injuries sustained "while operating or occupying a motorcycle or motor-driven cycle." RCW 48.22.030(2); see also Sowa v. Nat'l Indem. Co., 102 Wn.2d 571, 579 (1984) ("The statute . . . except[s] or omit[s] underinsured motorist protection when an insured is operating or occupying a motorcycle not insured by the policy."); Eurick v. Pemco Ins. Co., 108 Wn.2d 338, 343 (1987) ("The legislative intent was to grant insurers a special exemption from the general requirement of offering underinsured motorist coverage: insurers would not have to cover the special risks posed by motorcycles."). Subsection (2) also expressly excludes coverage for insureds "operating or

occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy." There is no dispute that Mr. Lucke was injured while operating a motorcycle, that the Luckes owned the motorcycle, and that the motorcycle was "not insured under the liability coverage of the policy."

Therefore, the Court GRANTS Commerce West's Motion for Summary Judgment with respect to this claim and DENIES the Luckes' Cross-Motion for Summary Judgment.

**Conclusion**

Because it is undisputed that the Policy did not provide for UIM or PIP coverage for damages sustained in the motorcycle accident, the Court GRANTS Plaintiff's Motion for Summary Judgment with respect to this claim.

Because Commerce West failed to comply with RCW 48.22.030(9), the Court DENIES Plaintiff's Motion for Summary Judgment with respect to this claim.

Because Commerce West's failure to comply with RCW 48.22.030(9) does not give rise to coverage by operation of statute, the Court GRANTS Plaintiff's Motion for Summary Judgment with respect to this claim and DENIES Defendants' Motion for Summary Judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 29, 2018.

Marsha J. Pechman
United States District Judge